UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA ALLAN KLING,

    Petitioner,

v.                                             Case No. 8:20-cv-800-CEH-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

    Joshua Allan Kling, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent filed a response opposing the petition. (Doc. 8.) Kling filed a reply. (Doc. 9.) Upon consideration, the petition will be **DENIED**.

**I.**     **Procedural History**

    A state-court jury convicted Kling of two counts of sexual battery on a victim under the age of twelve and one count of lewd or lascivious molestation of a victim under the age of twelve. (Doc. 8-2, Ex. 13.) The state trial court sentenced Kling to life without the possibility of parole on the sexual-battery counts and life with a mandatory minimum of twenty-five years on the lewd-or-lascivious count. (*Id.*, Ex. 14.) The state appellate court *per curiam* affirmed the convictions. (Doc. 8-3, Ex. 18.) Kling then sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex.

1

20.) The state trial court denied Kling's claims, and the state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Ex. 21; Doc. 8-4, Ex. 23; Doc. 8-5, Exs. 26, 29.) This federal habeas petition followed. (Doc. 1.)

## II.    Facts; Trial Testimony[1]

From 2012 to early 2014, Kling lived with his girlfriend, Katrina Stettler, and her daughter, R.S. Kling occasionally looked after R.S. when Stettler was at work or school. During this time, R.S. was eight and nine years old.

At trial, R.S. testified that she watched pornographic movies with Kling when they were alone in the apartment. According to R.S., the two were naked when they watched the videos together. R.S. testified that, once the movies were over, Kling's "private" touched her "private."[2] She clarified that Kling's "private touched [her] private" "more than one time." (Doc. 8-2, Ex. 11, p. 174.)

R.S. eventually told Stettler's brother about what Kling had done to her. When Stettler learned of the allegations from her brother, she confronted Kling and took R.S. to a pediatrician for a vaginal examination. R.S. refused the examination, but the doctor reported the alleged abuse to child protective services. The police began to investigate, and Detective Charles Boswell interviewed R.S. Using "age[-]appropriate language," R.S. told Detective Boswell that Kling had "digitally penetrated her" and

---

[1] This summary is based on the trial transcript.

[2] R.S. indicated that she referred to the "part where [she] go[es] pee from" as "[p]rivates," and that she referred to "the part where a boy goes pee from" as "[p]rivate[s]." (Doc. 8-2, Ex. 11, p. 164.)

2

"penetrated her vagina with his penis," that she had "touched his penis," and that he had "show[n] her pornographic movies." (*Id.*, pp. 245-46.)

Following this interview, Detective Boswell drove to Kling's place of employment, a Harley Davidson dealership in Hillsborough County. Detective Boswell interviewed Kling in a "manager's office" at the dealership. (*Id.*, p. 250.) On one side of the office was a large window overlooking a "bay" where employees serviced motorcycles. (*Id.*, pp. 250-51.) Detective Boswell and Kling were the only persons present during the interview. Before turning on his audio recorder, Detective Boswell "advised [Kling] of the nature of the allegations, made it clear that he wasn't under arrest," and gave him "his *Miranda* warnings" "out of an abundance of caution." (*Id.*, pp. 252, 254.) The two also discussed motorcycles.

Thirty-five minutes after the interview began, Detective Boswell turned on the recorder. At this point, Kling gave a detailed statement about R.S.'s allegations. He claimed that, on one occasion, he played a pornographic video for R.S. "in order to further instruct her on the ins and outs and what not to do and what to do." (*Id.*, p. 269.) According to Kling, R.S. was naked at the time. Kling stated that, while the video was playing, he pulled his pants down and took out his erect penis at R.S.'s request. Then, according to Kling, R.S. grabbed his arms and threw him off balance, causing him to "fall onto the bed." (*Id.*, p. 273.) Kling told Detective Boswell that his penis "may have touched [R.S.'s] vagina" at that point. (*Id.*) Kling also admitted that R.S. had touched his penis during this incident.

Kling described a second incident that took place "a few weeks" after the first. (*Id.*, p. 281.) He claimed he was watching television in his boxer shorts when R.S. ran out of the shower naked, "flew through the air," and "landed on [him]." (*Id.*, p. 279.) Kling's penis was "protruding from [his] boxers," and "there was contact between [his] penis and her vagina" when she "jumped" on him. (*Id.*, p. 280.)

Kling testified at trial. He claimed that his confession was false, and that he made the incriminating statements because of a "threat" Detective Boswell had made "off tape." (*Id.*, Ex. 12, pp. 347, 349-50.) Specifically, Detective Boswell allegedly told Kling that "he was on the force for over 20 years and in all that time, he's only had to kill one person." (*Id.*, p. 347.) Kling interpreted this statement as "impl[ying] that [Detective Boswell] was willing to shoot and kill me if I didn't cooperate."[3] (*Id.*) Kling also testified that he never touched R.S. or showed her pornography.

### III.   Standards of Review

#### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

---

[3] Detective Boswell testified that he did not threaten Kling or promise him anything in order to "get him to make a statement." (Doc. 8-2, Ex. 11, p. 263.)

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

5

### B. Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of

6

the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C. Ineffective Assistance of Counsel

Kling alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Kling must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Kling must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## IV. Discussion

### A. Ground One

Kling contends that trial counsel was ineffective for failing to adequately investigate Detective Boswell's "disciplinary history." (Doc. 1, pp. 4-5.) As Kling acknowledges, counsel moved to suppress his confession on the ground that "he was threatened and coerced by" Detective Boswell. (Doc. 8-2, Ex. 3, p. 3.) The trial court held a suppression hearing and denied the motion. (*Id.*, Ex. 4; *Id.*, Ex. 7, pp. 4-5.) At trial, counsel again argued that Detective Boswell had coerced Kling into confessing by threatening to kill him.

Following the jury verdict, Kling wrote a letter to the Hillsborough County Sheriff's Office requesting an investigation of Detective Boswell. (Doc. 8-3, Ex. 20, p. 15.) In August 2015—one year after the jury verdict—the State filed an Amended Notice of Discovery disclosing that Kling's complaint had been "sustained." (Doc. 1-1, p. 2.) The Notice explained that two weeks before the interview with Kling, Detective Boswell's supervisor had ordered him to "conduct all suspect interviews with another detective present and to audio record all interviews." (*Id.*, p. 3.) Despite this order, Detective Boswell interviewed Kling "without another detective present and failed to audio record the entire interview." (*Id.*) The Notice did not state that Detective Boswell had threatened or coerced Kling during the interview. Nor did it state that, before his interview with Kling, Detective Boswell had ever threatened or coerced a suspect during an interrogation.

8

Kling argues that trial counsel was ineffective for failing to uncover Detective Boswell's misconduct. He claims that, had counsel conducted a proper investigation, the trial court would have learned that Detective Boswell violated his supervisor's orders by interviewing Kling alone and failing to record the entire conversation. According to Kling, this evidence would have bolstered his claim that the confession was coerced. Indeed, Kling argues that the trial court would have granted his motion to suppress if it had learned of Detective Boswell's misconduct. And even if the motion were denied, Kling "still would have had the opportunity at trial to show the jury Detective Boswell's misconduct which, in turn, would have been evidence to support his false confession theory of defense." (Doc. 9, p. 5.)

Kling acknowledges that he did not present Ground One in state court.[4] Because he cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal

---

[4] Kling presented a related (but distinct) claim in his state postconviction motion. There, he argued that the disciplinary finding constituted newly discovered evidence warranting a new trial. (Doc. 8-3, Ex. 20, p. 15.) The state court rejected this claim on the grounds that the "newly discovered evidence" would not be likely to "produce an acquittal at trial." (Doc. 8-4, Ex. 23, p. 6.) The court explained that, "when the trial court ruled on the admissibility of [Kling's] recorded admissions, it was already aware that Detective Boswell conducted the interview alone, the entire interview was not recorded, and Detective Boswell's and [Kling's] versions of the off-tape exchanges differed significantly." (*Id.*) The court also noted that "the jury reached its verdict after hearing testimony that Detective Boswell conducted the interview by himself, that he did not record the entire interview, and hearing that the parties' versions of what took place during the off-tape exchanges differed greatly." (*Id.*) In any event, Kling's assertion of the "newly discovered evidence" claim in state court was insufficient to exhaust the ineffective-assistance claim he raises here. *See, e.g.*, *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that, for purposes of exhaustion, a substantive claim is "separate and distinct" from an ineffective-assistance-of-counsel claim based on the substantive claim).

habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Kling seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

*Martinez* does not excuse the default of Ground One because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. Even assuming that counsel's performance was deficient, Kling fails to show that he was prejudiced by the allegedly inadequate investigation. To satisfy the prejudice prong under *Strickland*, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Moreover, "[a] petitioner cannot establish ineffective assistance by identifying

10

additional evidence that could have been presented when that evidence is merely cumulative." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002).

Here, Kling faults trial counsel for not uncovering evidence that Detective Boswell violated his supervisor's orders—and thus engaged in sanctionable misconduct—by interviewing Kling alone and failing to record the entire conversation. At the suppression hearing, however, Detective Boswell testified that (1) he was the only law enforcement officer present during the interview, and (2) he did not record the first thirty-five minutes of the conversation. (Doc. 8-2, Ex. 4, pp. 6-9, 14, 18.) Detective Boswell offered the same testimony at trial. (*Id.*, Ex. 11, pp. 251, 260-62.) Thus, the information counsel failed to uncover is largely cumulative of other evidence presented during the suppression hearing and at trial. *See Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1260-61 (11th Cir. 2012) ("[E]vidence presented in postconviction proceedings is cumulative or largely cumulative to or duplicative of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury."); *McNamee v. Sec'y, Fla. Dep't of Corr.*, No. 18-14494-CIV, 2021 WL 1222665, at *12 (S.D. Fla. Feb. 1, 2021) (petitioner failed to establish that additional testimony "would have changed the outcome of the motion to suppress" because "[m]uch of th[e] testimony [was] cumulative of evidence already before the trial court"), *adopted by* 2021 WL 1215786 (S.D. Fla. Mar. 31, 2021).

The only new information counsel would have been able to present is that Detective Boswell's actions violated the orders of his supervisor. Kling cannot show a

11

"reasonable probability" that, had counsel offered this additional information, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In his motion to suppress and at trial, Kling argued that his confession was involuntary because Detective Boswell had threatened him during the unrecorded portion of the interview. As noted above, the disciplinary report did *not* find that Detective Boswell had threatened or coerced Kling. Nor did it state that, before the interview, Detective Boswell had ever threatened or coerced any other suspect. Instead, the finding of misconduct rested entirely on Detective Boswell's failure to record the entire conversation with Kling and his decision to interview Kling without another officer present. Because this information was cumulative of other evidence presented during the suppression hearing and at trial, Kling can only speculate that he suffered prejudice from counsel's allegedly inadequate investigation. Speculation "is insufficient to carry the burden of a habeas corpus petitioner." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001).[5]

Accordingly, because Kling's ineffective-assistance claim is not substantial, *Martinez* does not excuse the procedural default, and Ground One is barred from federal habeas review.

---

[5] The Amended Notice of Discovery also disclosed that in February 2015—five months after trial—Detective Boswell "conducted an audio recorded interview with a suspect, failed to advise the suspect of [his] *Miranda* rights, and went off tape during the interview, in contradiction of [his supervisor's] order." (Doc. 1-1, p. 2.) Because this misconduct took place months after Kling was convicted (and thus could not have been discovered by trial counsel), it is irrelevant to the *Strickland* analysis. *See, e.g.*, *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) ("In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time.").

**B.     Ground Two**

In his reply, Kling indicates that he is "respectfully withdrawing Ground [Two] of his § 2254 Petition from this Court's consideration after carefully researching the relevant law," and that he "will be proceeding solely upon the contention that Ground [One] is sufficient to necessitate [f]ederal habeas redress from his state court conviction." (Doc. 9, p. 1.) Because Kling has withdrawn Ground Two from consideration, the Court will not address it here. *See, e.g.*, *Hicks v. Sec'y*, No. 3:19-cv-879-MMH-LLL, 2022 WL 1136632, at *8 (M.D. Fla. Apr. 18, 2022) ("In his Reply, [petitioner] withdraws the claim in ground two 'after carefully researching the relevant case law . . . .' Therefore, the Court deems ground two to be withdrawn and will not address it."); *Evans v. McNeil*, No. 3:07-cv-98-LAC-EMT, 2009 WL 3163214, at *17 (N.D. Fla. Sept. 30, 2009) ("In Petitioner's reply brief, he expressly withdraws Ground Three from consideration. Therefore, the court need not consider this claim."), *adopted by* 2009 WL 3710725 (N.D. Fla. Nov. 3, 2009).[6]

It is therefore **ORDERED** that Kling's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Kling and to **CLOSE** this case.

---

[6] Kling seeks an evidentiary hearing on his petition. (Doc. 1, p. 15.) An evidentiary hearing is not warranted here. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## Certificate of Appealability
## and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Kling is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a certificate of appealability must first issue. *Id*. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To obtain a certificate of appealability, Kling must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Kling has not made the requisite showing. Finally, because Kling is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida, on April 28, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Petitioner, *pro se*

14